[Docket No. 7]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| J.V. and H.V., *on behalf of* D.V., | |
| Plaintiffs, | |
| v. | Civil No. 24-7333 (RMB/SAK) |
| CHERRY HILL TOWNSHIP BOARD OF EDUCATION, | **OPINION** |
| Defendant. | |

**APPEARANCES**

DAVIS & MENDELSON, L.L.C.
Howard S. Mendelson
1200 Laurel Oak Rd
Suite 101
Voorhees, New Jersey 08043

    *Attorney for Plaintiffs*

METHFESSEL & WERBEL, ESQS.
Eric L. Harrison
205 Lincoln Hwy, Suite 200
Edison, New Jersey 08817

    *Attorney for Defendant*


**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiffs J.V. and H.V., on behalf of their child D.V. (together, the "Plaintiffs"),

bring this action for attorney's fees and costs and expert fees and costs pursuant to

20 U.S.C. § 1415(i)(3)(B)(i)(I), 29 U.S.C. § 794a, and 42 U.S.C. § 12133, arguing that

they are entitled to this remedy as the prevailing party in an underlying dispute under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(s) ("ADA"). This matter now comes before the Court upon Defendant Cherry Hill Township Board of Education's (the "District" or "Defendant") motion to dismiss for failure to state a claim [Docket No. 7-3] and Plaintiffs' cross-motion to amend their Complaint [Docket No. 8-2].[1] For the reasons set forth below, the Court will **DENY** Defendant's Motion, in part, and **CONVERT** the Motion to one for summary judgment, in part.

I.    **FACTUAL BACKGROUND**

J.V. and H.V. are the parents of D.V., a child who has been diagnosed with Autism Spectrum Disorder, mixed receptive-expressive language disorder, and milestone delays for his age. [Compl. ¶ 44 (Docket No. 1).] D.V. is classified for special education services under the autism classification. [*Id.* at ¶ 23.] Most recently, he attended Woodcrest Elementary School, which is operated by the District. [*Id.* at ¶ 22.] D.V. is a child with a disability who is eligible to receive special education

---

[1]    Plaintiffs' purported cross-motion to amend the complaint was raised in their submission in opposition to Defendant's motion. It was not separately filed, did not include a proposed amended complaint in compliance with Local Rule 15.1, and it is not designated as a pending motion before this Court. The Court need not entertain this application. L. R. Civ. P. 7.1(d)(7). Regardless, for all the reasons stated herein, the Court denies Plaintiffs' purported cross-motion to amend as moot.

services under the IDEA, as well as a qualified individual with a disability under Section 504 and the ADA. [*Id.* at ¶ 2.]

D.V. was first referred for special education eligibility on September 26, 2019, and an initial Individualized Education Program ("IEP") was implemented on January 21, 2020. [*Id.* at ¶ 22.] D.V. has been enrolled in preschool (2021–2022), kindergarten (2022–2023), and first grade (2023–2024) in special disability programs. [*Id.*] D.V. has had several IEPs over the years, and D.V.'s parents have lodged numerous complaints with the District about the sufficiency of those IEPs to accommodate D.V.'s disability. [*Id.* at ¶¶ 47–82.]

Ultimately, these complaints culminated in the Plaintiffs filing a Petition for Due Process with the New Jersey Office of Administrative Law on July 20, 2022. [*Id.* at ¶¶ 79–80.] This petition was withdrawn and subsequently dismissed without prejudice on October 12, 2023. [*Id.*; Mendelson Cert. ¶ 32 (Docket No. 8-3).] Thereafter, Plaintiffs filed a second petition on November 7, 2023, alleging that the District failed to provide a Free Appropriate Public Education ("FAPE") in the least restrictive environment for D.V., as required by the IDEA, 20 U.S.C. § 1400(d)(1)(A). [Compl. ¶¶ 12, 79–80.] The second petition sought:

> (1) a finding that the District's program and placement was not appropriate for D.V.'s educational needs; (2) a finding that the District failed to make a FAPE available to D.V., (3) a finding that D.V. required an out of district placement, (4) a finding that the parents were reasonable in making such request, (5) an Order requiring the District to reimburse the Parents for the cost of an out of district placement, (6) an Order requiring the District to reform D.V.'s IEP to include and provide for an out of district placement for the [2023–2024] school year and continuing for so long as same remains appropriate, (7) a finding that the private

placement in an out of district setting capable of meeting D.V.'s needs is appropriate, (8) an Order directing the District to reimburse the parents for the cost of D.V.'s out of district academic program, and for the entire cost of D.V.'s placement for the [2023–2024] school year, (9) an Order directing the District to reimburse parents for the cost of D.V.'s transportation to and from the out of district placement and continuing for so long as same remains appropriate, and (10) an Order directing the District to reform D.V.'s IEP to provide for out of district placement and transportation at no cost to parents for the 2023–2024 school year and continuing for so long as same remains appropriate.

[*Id.* at ¶ 80.]

On March 6, 2024, the parties voluntarily and privately reached a new IEP agreement at a meeting. [Harrison Cert. Ex. 1.] The IEP commenced on March 6, 2024 and ended on June 13, 2024, during which period the student would receive support services. [*Id.* at 1.] The IEP provided for an out-of-district placement, with a "bank" of up to 720 hours of supplemental instruction outside of school hours. [*Id.* at 1, 22.] It also provided that when D.V. began attending this out-of-district placement, the District's IEP team would meet with the staff at the placement thirty days afterward ("or earlier if warranted") to revisit the IEP in light of his progress. [*Id.* at 24.]

The IEP was then memorialized in a written settlement agreement (the "Settlement Agreement"), which contains materially the same terms as the IEP [Compl. Ex. A.] The Settlement Agreement explicitly provides that the March 6, 2024 IEP "will continue to be implemented as written." [*Id.* at ¶ 1.] This includes the out-of-district placement; the immediate availability of the 720 supplemental instruction hours while the out-of-district placement was pending; and home

instruction pending the out-of-district placement.  [*Id.* at ¶¶ 1, 2.]  Pursuant to the Settlement Agreement, the District "shall be solely responsible for all tuition, costs, transportation expenses, and all other costs associated with implementation of the March 6, 2024 IEP."  [*Id.* at ¶ 3.]  Additionally, the Settlement Agreement assigns logistical and administrative responsibilities for the placement to the District, and obligates the District to advise Plaintiffs of any actions necessary to secure the out-of-district placement.  [*Id.* at ¶ 4.]  It further provides that if no out-of-district placement "mutually agreeable to the parties" was found by June 30, 2024—the IEP termination date—the IEP team would meet and draft a new IEP in July.  [*Id.* at ¶ 5.]  If no agreement could be reached then, the March 6, 2024 IEP would "remain D.V.'s 'stay put' placement, in the event of a subsequent dispute."  [*Id.*]  Under the Settlement Agreement, Plaintiffs waived all claims against the District relating to facts occurring prior to the execution of the agreement, except claims to enforce the Settlement Agreement.[2]  [*Id.* at ¶ 6.]

The Settlement Agreement specifically addressed the "prevailing parties" issue:

> While the District maintains that the Petitioners are not "prevailing parties" and, as such, are not entitled to attorney fees or costs, the Petitioners disagree and, as such, maintain that they are "prevailing parties" entitled to attorney fees and costs.  Accordingly, to effectuate a settlement that avoids an unnecessary due process hearing simply because of the parties' dispute over fees and costs, the parties agree that Petitioners shall retain their right to file an action in the United States

---

[2]  Plaintiffs maintained all substantive and procedural rights to file subsequent Complaints for Due Process against the District relating to future acts or omissions. [Compl. Ex. A ¶ 5.]

District Court for an award of attorney fees as a "prevailing party."
The District reserves all defenses to such a claim.

[*Id.* at ¶ 7.] The Settlement Agreement additionally stated that it "represent[ed] a compromise of disputed claims between the parties" and would "not be treated as an admission on the District's part that it has not offered D.V. an appropriate program or placement or has failed to act in accordance with any applicable laws, statutes, regulations, and/or codes at any time." [*Id.* at ¶ 12.] Finally, the Settlement Agreement provided that it would be submitted to a New Jersey Administrative Law Judge ("ALJ") "for incorporation into a Decision Approving Settlement." [*Id.* at ¶ 9.]

In accordance with the Settlement Agreement's terms, it was submitted to and approved by ALJ Kathleen Calemmo on April 25, 2024 (the "Final Decision"). [Compl. Ex. C.] ALJ Calemmo's decision included the Settlement Agreement as an exhibit and explained that "[t]he parties have voluntarily agreed to resolve all disputed matters and have entered into a settlement as set forth in the attached document." [*Id.* at 1.] She further found that "[t]he parties have voluntarily agreed to the settlement as evidenced by their signatures or their representatives' signatures on the attached Settlement Agreement and Release, received on April 25, 2024." [*Id.* at 2.] The order directs "that the parties comply with the settlement terms" and states that any compliance concerns "should be communicated in writing to the Direct, Office of Special Education." [*Id.*]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to state a claim upon which relief can be granted.  The party seeking dismissal of the complaint must show it fails to state a claim.  *Lesher v. Zimmerman*, 822 F. App'x 116, 119 (3d Cir. 2020).  When reviewing a motion to dismiss, courts must accept the complaint's factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)).  Courts will dismiss a complaint if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts will not accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 663; *see also Malleus*, 641 F.3d at 563.

Courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When "matters outside of the pleadings" are presented to and are not excluded by the court on a Rule 12(b)(6) motion, the court must instead convert the motion into one for summary judgment under Federal Rule of Civil Procedure 56, after giving proper notice to the parties.  FED. R. CIV. P. 12(d); *In re Rockefeller Ctr. Prop., Inc. Secs. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).  Notice must be "unambiguous" and "fairly apprise" the parties of the court's intention to convert the motion.  *Rockefeller*, 184 F.3d at 288.

"Matters outside of the pleadings" does not include, however, documents "integral to or explicitly relied upon in the complaint." *Id.* (citations omitted).  That includes "any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 178 (3d Cir. 2024) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016)).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  *Pension Benefit*, 998 F.2d at 1196.

## III.    DISCUSSION

Under the "American Rule," parties are generally responsible for their own attorney's fees.  *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975).  Parties are thus not awarded attorney's fees unless permitted by statute.  *Key Tronic Corp v. United States*, 511 U.S. 809, 819 (1994).  The IDEA, Section 504, and the ADA each include a fee-shifting provisions that allows a court "in its discretion" to award

"reasonable attorneys' fees as part of the costs" to a "prevailing party." 20 U.S.C. § 1415(i)(3)(B)(i)(I); 29 U.S.C. § 794a; 42 U.S.C. § 12205.[3]  Although expert fees are not compensable under the IDEA, they may be awarded under Section 504 and the ADA. *Perkiomen Valley School Dist. v. R.B.*, 533 F. Supp. 3d 233, 260 (E.D. Pa. 2021) (citations omitted).

Plaintiffs claim that they are the "prevailing parties" in the underlying administrative proceeding and are thus entitled to attorney's fees and costs under IDEA, Section 504, and the ADA.  According to Plaintiffs, they would not have received the relief set forth in the Settlement Agreement "but for the immense amount of litigation, judicial oversight/involvement by" ALJ Barry Moscowitz,[4] "litigation preparation performed by the Plaintiffs (and their expert . . . ) in anticipation of a due process hearing, and the [April 2024] hearing dates looming over the parties' heads." [Pls.' Opp'n at 1.]  Defendant, on the other hand, argues that Plaintiffs have not achieved this status because the parties' Settlement Agreement was not judicially sanctioned and did not effect a change in the parties' legal relationship.  Additionally,

---

[3]     It appears that the underlying due process petition was brought pursuant to the IDEA only.  As a result, Defendant claims, Section 504 and the ADA are "wholly inapplicable to the instant proceeding."  [Def.'s Br. at 17 (Docket No. 7-3).] Defendant, however, has not moved to dismiss those claims on this ground and so the Court does not address the applicability of those statutes at this time.

[4]     ALJ Moscowitz apparently presided over the first due process petition filed by Plaintiffs and held a number of settlement conferences with the parties in 2023 prior to the filing of the second due process petition.  On April 19, 2024, just days before the Settlement Agreement was finalized, ALJ Moscowitz held another settlement conference with the parties.

Defendant contends that Plaintiffs erroneously apply the "catalyst theory" of fee recovery, which was expressly rejected by the Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001).

Defendant is correct that Plaintiffs argue their case under outdated law. Prior to 2001, courts were divided as to whether a plaintiff is the "prevailing party" "if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct"—the "catalyst theory"—or whether an additional judicial element was required. *Buckhannon*, 532 U.S. at 601–02. This additional judicial element, often described as "judicial *imprimatur*," entails "obtain[ing] an enforceable judgment, consent decree, or settlement giving some of the legal relief sought." *Id.* at 602 (quoting *S–1 and S–2 v. State Bd. of Ed. of N.C.*, 21 F.3d 49, 51 (4th Cir. 1994)) (internal quotation marks omitted).

In 2001, the Supreme Court in *Buckhannon* resolved the circuit split and rejected the catalyst theory, holding that for a plaintiff is a prevailing party only if there has been a "material alteration in the legal relationship of the parties" that carries "judicial *imprimatur*." *Id.* at 604–05 (quoting *Texas State Teachers Ass'n v. Garland Ind. School Dist.*, 489 U.S. 782, 792 (1989) (internal quotation marks omitted)). In other words, to be a prevailing party, the plaintiff must have obtained some kind of *judicial* relief on the merits, rather than relief alone. *See id.* at 606–07, 610. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to

achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605. *Buckhannon* continued: "Our precedent thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties." *Id.* (emphasis in original). Thus, the Court must determine whether the parties' Settlement Agreement and the ALJ's Final Decision rendered Plaintiffs the prevailing parties in the administrative proceeding under *Buckhannon*.[5]

### A. Material Alteration of the Parties' Legal Relationship

The Court first addresses whether the Settlement Agreement and Final Decision resulted in a material alteration of the legal relationship between Plaintiffs and the District. A material alteration in the legal relationship of the parties in a civil rights action is "an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement," that "[affects] the behavior of the defendant toward the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (citations omitted); *accord P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 855 (3d Cir. 2006) ("a resolution 'materially alters the legal relationship between the parties' when it 'modif[ies] the defendant's behavior in a way that directly benefits the plaintiff.'") (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3D 238, 251

---

[5]    This framework applies equally to the fee-shifting provisions in IDEA, Section 504, and the ADA. *John T. ex rel. Paul T. v. Delaware Co. Intermediate Unit*, 318 F.3d 545, 556 (3d Cir. 2006); *see also Rena C. v. Colonial Sch. Dist.*, 890 F.3d 404 (3d Cir. 2018) (applying *Buckhannon* to claim for attorney's fees under Rehabilitation Act); *J.C. v. Regional Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 125 (2d Cir. 2002) (same).

(3d Cir. 1999)).  For example, a judgment that "materially altered the school district's policy limiting the rights of teachers to communicate with each other concerning employee organizations and union activities," where plaintiffs were covered by the policy, effected a material alteration in the legal relationship between the parties.  *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 793 (1989).

This material alteration does not need to be complete relief on all claims; "even an award of nominal damages suffices under this test."  *Buckhannon*, 532 U.S. at 604.  "[A] party achieves a 'material alteration' of the parties' legal relationship and 'prevail[s]' for attorneys' fees purposes only if he obtains relief that is 'in some way merit[s]-based.'"  *M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 224 (3d Cir. 2017) (quoting *Raab v. City of Ocean City, New Jersey*, 833 F.3d 286, 293 (3d Cir. 2016)).  "[P]revail[ing] through a settlement rather than through litigation" may constitute a material alteration of the parties' legal relationship.  *Raab*, 833 F.3d at 293.

The District argues that the parties' Settlement Agreement and the Final Decision did not materially alter the parties' legal relationship because "they merely reflected the relief already voluntarily provided to the Plaintiffs by the IEP of March 6, 2024."  [Def.'s Br. at 16.]  But this is not the correct metric to evaluate the change in the parties' relationship.  The comparison is instead between the relief sought in the underlying Petition for Due Process and the relief obtained in the Settlement Agreement, rather than between the IEP and the Settlement Agreement and Final Decision memorializing that IEP.  Put simply, the Court must "make a commonsense comparison between the relief sought and obtained."  *D.S. v. Voorhees Twp. Bd. of Educ.*,

No. CV 16-131 (RMB/JS), 2016 WL 7387413, at *5–6 (D.N.J. Dec. 21, 2016) (internal citation omitted) (comparing relief sought in Due Process Petition to relief obtained in final settlement agreement to determine prevailing party status); *accord K.N. v. Passaic City Bd. of Educ.*, No. CIV.A. 11-399 JLL, 2011 WL 5157280, at *7 (D.N.J. Oct. 28, 2011) (comparing relief achieved in consent order approving parties' settlement with relief demanded in plaintiffs' Petition for Due Process).

Here, there was clearly a material alteration of the legal relationship between the parties effected through the March 6, 2024 IEP, the Settlement Agreement, and the Final Decision. The underlying due process petition sought new IEP terms that included an out-of-district placement. This relief was obtained in the March 6, 2024 IEP and later memorialized in the Settlement Agreement and Final Decision. Comparing the relief sought and the relief obtained, it is clear that the Settlement Agreement and Final Decision modified the District's behavior in a way that directly benefited the Plaintiffs. This is sufficient to allege a material alteration in the parties' legal relationship, the first prong under *Buckhannon*. The Motion to Dismiss is denied as to this issue.

## B. Judicial *Imprimatur*

This, however, is not enough to establish that the Plaintiffs are prevailing parties. The Settlement Agreement must also have been judicially sanctioned. *Buckhannon*, 532 U.S. at 604–05. The Court reiterates that a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change."

*Id.* at 605. But a "settlement agreement[] enforced through a consent decree may serve as the basis for an award of attorney's fees" because it judicially compels conduct. *Id.* at 604. Without some element of judicial compulsion there is insufficient judicial *imprimatur* to confer prevailing party status. *Id.* at 604, 608–09.

"Private settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal." *See Buckhannon*, 532 U.S. at 604 n.7. However, "under *Buckhannon*, attorney's fees may be awarded based on a settlement when it is enforced through a consent decree." *Truesdell v. Philadelphia Hous. Auth.*, 290 F.3d 159, 165 (3d Cir. 2002) (citing *Buckhannon*, 532 U.S. at 604). An agreement that appears to be a "stipulated settlement" may nonetheless bear the judicial *imprimatur* of a consent decree if it orders or compels a specific action by a party through "mandatory language," is entitled "Order," "bears the signature of the [judge], *not* the parties' counsel," and provides for judicial enforcement. *Id.* (emphasis added); *see also John T.*, 318 F.3d at 558.

### i.    The Final Decision Does Not Bear Markers of a Consent Decree

Defendant argues that the Final Decision lacks sufficient judicial *imprimatur* to confer prevailing party status. The Final Decision observes that the parties entered into the Settlement Agreement voluntarily, and that agreement in turn "merely mirrored the terms of the previously-negotiated IEP which was the product of private negotiations out of court" and "wholly outside of any judicial process." [Def.'s Br. at 12–13.] Defendant argues that the Final Decision "simply adopts the Settlement

14

Agreement" and includes "no mandatory language or express incorporation of the Settlement Agreement provisions into the Final Decision." [Def.'s Reply at 8 (Docket No. 11).] The Court agrees.

The Final Decision reads in full:

This case arises under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 to 1482. The parties have voluntarily agreed to resolve all disputed matters and have entered into a settlement as set forth in the attached document.

I have reviewed the terms of settlement and I **FIND**:

1. The parties have voluntarily agreed to the settlement as evidenced by their signatures or their representatives' signatures on the attached Settlement Agreement and Release, received on April 25, 2024. []
2. The settlement fully disposes of all issues contained in the Settlement Agreement.

Therefore, I [ALJ Calemmo] **ORDER** that the parties comply with the settlement terms and that these proceedings be concluded.

This decision is final pursuant to 20 U.S.C. § 1415(i)(1)(A) and 34 C.F.R. § 300.514 (2022). If the parent or adult student feels that this decision is not being fully implemented with respect to program or services, this concern should be communicated in writing to the Director, Office of Special Education.

[Compl. Ex. C (emphasis in original).]

The brief Final Decision notes *twice* that the parties voluntarily agreed to the Settlement Agreement. Nowhere does the ALJ sanction the terms of the Settlement Agreement. The terms are not even incorporated into the Final Decision. Additionally, the Final Decision does not compel any action other than compliance with voluntarily reached terms. [*Id.*] The Final Decision includes none of the mandatory language that the courts above found sufficient to confer judicial

imprimatur. *See, e.g.*, *P.N.*, 442 F.3d at 851 (finding that ALJ's consent orders entered had sufficient judicial imprimatur where order compelled specific action by defendant school district and were enforceable under state law and Section 1983); *K.N.*, 2011 WL 5157280, at *9 (granting prevailing party status where plaintiffs obtained two consent orders compelling specific action by defendants).

What's more, the Final Decision is not entitled "Order" and bears no characteristics of a consent order or decree demonstrating judicial *imprimatur*. [Compl. Ex. C at 1.] Indeed, by its own terms the Final Decision is not a consent order or decree, but merely a "decision approving [the] settlement" voluntarily reached by the parties, which concluded the proceedings in court. [*Id.*] And, while the Final Decision is signed by the ALJ, the Settlement Agreement itself – which contains the actual material terms of compliance for the parties – is signed only by the parties. [Compl. Ex. A.]

Finally, the ALJ did not retain jurisdiction over enforcement of Settlement Agreement's terms. Rather, the Final Decision specifically states that concerns regarding compliance should be raised – not before the ALJ – but with "the Director, Office of Special Education." [Compl. Ex. C at 2.] In *Raab*, by contrast, the Third Circuit found that the plaintiff was the prevailing party where the underlying court order incorporated the terms of the parties' settlement agreement and explicitly stated that the court retained jurisdiction over the settlement agreement. 833 F.3d at 294.

For these reasons, the Court finds that the Final Decision alone on its face does not judicially enforce the terms of the parties' Settlement Agreement through a consent

decree and, therefore, lacks sufficient judicial *imprimatur* to give Plaintiffs prevailing party status. *See, e.g.*, *Sutton v. Plainfield Bd. of Educ.*, No. 22-2062, 2024 WL 1554059, at *1–2 (3d Cir. Apr. 10, 2024) (a voluntary change in conduct without judicially sanctioned relief does not give rise to prevailing party status); *A.W. v. East Orange Bd. of Educ.*, 248 F. App'x 363, 364–365 (3d Cir. 2007) (prevailing party status not obtained by virtue of reaching an acceptable IEP through out-of-court negotiations and "no court . . . endorsed the agreement with a judicial imprimatur.").

### ii.    Whether the Settlement Agreement Was Negotiated In Court Cannot be Resolved on a Motion to Dismiss

Plaintiffs claim, however, that this does not doom their case because the Settlement Agreement was reached through extensive settlement discussions between the parties and ALJ Moscowitz and ALJ Calemmo.  According to Plaintiffs, the District's assertion that the IEP and Settlement Agreement was reached "wholly outside of any judicial process" is "wholly inaccurate and blatantly untrue." [Pls.' Opp'n at 18.]  They do not point to the pleadings to support this statement, but rather to a certification submitted by Plaintiffs' counsel, Howard S. Mendelson, Esq., in connection with their opposition brief.  [Mendelson Cert. (Docket No. 8-3).]  In this certification, Mr. Mendelson details his version of events leading up to the Settlement Agreement and Final Decision.  [*Id.*]  None of this information is included in the Complaint or exhibits thereto.

At this stage, this Court's review is limited to the allegations in the complaint, matters of public record, and documents integral or attached to or explicitly relied

upon in the complaint. *Mator*, 102 F.4th at 178; *Schmidt*, 770 F.3d at 249. The Court cannot consider the contents of the Mendelson Certification without converting the instant motion into one for summary judgment under Rule 56 and giving the parties proper notice. FED. R. CIV. P. 12(d).[6]

Thus, as a preliminary matter, the Court addresses whether the contents of the certification, if considered, would even be relevant to the Court's determination. Plaintiffs claim that the District would never have agreed to the March 6, 2024 IEP or the Settlement Agreement "but for" the pressure of litigation and the "judicial oversight/involvement" of the ALJs in the administrative proceeding. [Pls.' Opp'n at 1.] In other words, Plaintiffs argue that their achievement of the favorable IEP terms and Settlement Agreement were effectively the result of the actions of the administrative court. [*Id.* at 21.] Plaintiffs cite to a pre-*Buckhannon* Third Circuit decision for the proposition that they are prevailing parties if "a causal connection exists between the litigation and the relief obtained from the defendant." [*Id.* at 11 (citing *Wheeler v. Towanda Area Sch. Dist.* 950 F.2d 128, 131–32 (3d Cir. 1991)).]

---

[6]     Ironically, despite offering this certification, Plaintiffs argue that it is *Defendant* that improperly offers material outside the pleadings. According to Plaintiffs, the Court cannot rely upon the March 6, 2024 IEP at this stage because it is not integral to or relied upon in the Complaint. [*See* Pls.' Opp'n at 8–9.] The Court disagrees. The March 6, 2024 IEP is memorialized in the Settlement Agreement that forms the basis of this entire litigation and is repeatedly referred to in the Complaint. [*See, e.g.*, Compl. at ¶¶ 84, 94, 98.] It is therefore properly considered on a motion to dismiss even though not attached to the Complaint. *See Pension Benefit*, 998 F.2d at 1196 ("Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.").

That the administrative proceedings were "looming over the parties' heads" and purportedly forced the District's hand to settle, even if true, is irrelevant. [*See id.* at 1.] This argument rests on the catalyst theory of prevailing party status, which, as explained above, was expressly rejected by *Buckhannon*. Plaintiffs' argument that "the District would not have done what it eventually accomplished in this matter but for the involvement of" the administrative litigation [*id.* at 17] misses the point. The mere achievement of a desired litigation objective through out-of-court negotiations is insufficient to demonstrate judicial *imprimatur*. *John T.*, 318 F.3d at 560–61.

*Buckhannon*'s rejection of the catalyst theory also directs the Court not to delve into the subjective motivations of the parties in coming to an agreement. Aside from being a purely speculative exercise, such credibility determinations are appropriate neither at the motion to dismiss stage nor at summary judgment. "[A] request for attorney's fees should not result in a second major litigation." *Buckhannon*, 532 U.S. at 609 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983)) (rejecting catalyst theory because "a 'catalyst theory' hearing would require analysis of the defendant's subjective motivations in changing its conduct" that would "spawn[] a second litigation of significant dimension.").

Plaintiffs also claim in the Mendelson Certification that the IEP and resultant Settlement Agreement were the product of numerous settlement conference with ALJ Moscowitz as well as conferences with ALJ Calemmo and, as a result, the Settlement Agreement was developed with the court and carries judicial *imprimatur*. [Pls.' Opp'n at 21.] The District appears to concede that this may be a viable theory:

"Plaintiffs apparently regret not ensuring that the resolution in this matter was not the express product of the oft-cited conferences convened by Judge Moscowitz. . . . those events might have afforded the Settlement Agreement the judicial imprimatur needed to confer prevailing party status." [Def.'s Reply at 8.]  This is confirmed in the case law.  *See R.B.A. v. Jersey City Bd. of Educ.*, No. 15-CV-8269 (LDW), 2023 WL 3098713 at *4 (D.N.J. Apr. 26, 2023) (finding plaintiffs to be prevailing parties where settlement agreement was result of "numerous Court-conducted settlement conferences" and "parties reached a settlement in principle before" judge); *but see John T.*, 318 F.3d at 560 (IEP achieved "through negotiations out of court" was insufficient to confer prevailing party status).

There is clearly a dispute as to the level of judicial involvement in the Settlement Agreement that cannot be resolved on the pleadings.[7]  Plaintiffs' claim that they are the prevailing party is based, in part, on materials not offered or incorporated by reference in the Complaint.  The Court thus cannot consider the Mendelson Certification or other proofs related to settlement negotiations without converting Defendant's Motion to one for summary judgment.  Rather than dismissing the Complaint with leave to amend, the Court intends to resolve this case efficiently and expeditiously by converting the instant Motion to Dismiss to one for summary

---

[7]     The Court notes for the benefit of the parties that it only finds court involvement relevant to the extent it took place *after* the November 7, 2023 due process petition was filed.  Settlement conferences relating to the first due process petition filed in July 2022 are irrelevant under *Buckhannon*.

judgment under Rule 56 pursuant to Rule 12(d). The Court hereby provides notice to the parties that it will convert this portion of Defendant's Motion only to one for summary judgment following limited discovery regarding the settlement negotiations related to the underlying IEP and Settlement Agreement. *Hyldahl v. Denlinger*, 661 F. App'x 167, 172 (3d Cir. 2016) ("The decision to convert a motion to dismiss to a motion for summary judgment is generally committed to the district court's discretion.") (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 n.11 (3d Cir. 1992)). At the close of this limited discovery, the District may resubmit its motion as one for summary judgment and both parties will be permitted to supplement the record as appropriate.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Docket No. 7] is **DENIED**, in part, and **CONVERTED** to a Motion for Summary Judgment, in part.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
Chief United States District Judge

DATED: <u>April 21, 2025</u>